IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARIE D. NANCARROW,                       )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )
                                          )   Civil Action NO: 1:04-cv-00224-KAJ
JO ANNE B. BARNHART,                      )
COMMISSIONER OF SOCIAL                    )
SECURITY,                                 )
                                          )
                    Defendant.            )
                                          )

---

## MEMORANDUM OPINION

---

Selma Hayman; 1326 King Street, Wilmington, Delaware 19801, Counsel for Plaintiff.

Colm F. Connolly, United States Attorney, District of Delaware; Douglas E. McCann, Assistant United States Attorney, District of Delaware; 1007 Orange Street, #700, Wilmington, Delaware 19801, Counsel for Defendant
    Of Counsel: David F. Chermol, Special Assistant United States Attorney; Donna L. Calvert, Regional Chief Counsel, Region III; Office of the General Counsel, Social Security Administration, P.O. Box 41777, Philadelphia, Pennsylvania 19101.

---

October 11, 2005

JORDAN, District Judge

I.   **INTRODUCTION**

Before me is a motion for summary judgment[1] (Docket Item ["D.I."] 14) brought

by plaintiff, Marie D. Nancarrow ("Nancarrow"), and a cross-motion for summary

judgment (D.I. 17) brought by the defendant, Commissioner of Social Security (the

"Commissioner"). Nancarrow brings this action under 42 U.S.C. § 405(g), seeking

review of the Commissioner's final decision denying her disability benefits under Title II

of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-34. Jurisdiction is proper under

28 U.S.C. § 1331 and 42 U.S.C. § 405(g).

II.   **BACKGROUND**

A.   Procedural History

Nancarrow initially filed for disability benefits on May 15, 1998 and did not make

an appeal after her claim was denied. (D.I. 14 at 4; D.I. 17 at 1.) On January 13, 2000,

she applied for disability benefits again, alleging that she has been disabled since

December 15, 1992, but her application was denied a second time. (*Id.*) Nancarrow

then filed a request for a hearing before an administrative law judge ("ALJ"), which

hearing was subsequently held on June 14, 2002. (D.I. 14 at 4; D.I. 17 at 2.) At the

hearing, she was represented by counsel and testified on her own behalf.[2] (D.I. 12 at

---

[1]Plaintiff filed an opening brief but did not first file a motion, nor did she specify on the cover of her opening brief the character of the motion. However, it appears from the arguments in the briefing that plaintiff intended to file a motion for summary judgment, and I treat her briefing as in support of such a motion.

[2]Also testifying on behalf of Nancarrow was a vocational expert and Nancarrow's husband. (D.I. 12 at 48, 62.)

-1-

30.) On December 3, 2002, the ALJ concluded that, within the meaning of the Act, Nancarrow was not disabled on or before March 31, 1999, the last date on which she was insured for disability benefits. (*Id.* at 17.)

Nancarrow then appealed the ALJ's decision to the Appeals Council of Social Security. (*Id.* at 13.) On February 17, 2004, the Appeals Council "found no reason . . . to review the [ALJ's] decision," thereby denying Nancarrow's request. (*Id.* at 5.) Therefore, the December 3, 2003 decision of the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955, 404.981, 422.210; *see also Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) (noting that, if Appeals Council denies request for review, ALJ's decision becomes Commissioner's final decision) ; *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (same). Nancarrow now seeks review by this Court under 42 U.S.C. § 405(g). (D.I. 14 at 4.)

B.   Facts

Nancarrow was forty-seven years old on March 31, 1999, the date through which she was insured for disability benefits. (D.I. 12 at 20.) She is a high school graduate, has six years of vocational training as an optician, and worked as an optician for a few years. (*Id.* at 32; D.I. 17 at 4.) She also has past work experience as a sales clerk, title clerk, and art gallery manager. (D.I. 12 at 144.) Plaintiff received worker's compensation benefits from 1988 to 1991 due to an injury to her left arm. (*Id.* at 32-33.)

Nancarrow alleges an inability to work as of December 15, 1992. (*Id.* at 123.) She claimed that her disabling condition began in a work-related injury in September of

-2-

1988, when she was employed at an art gallery. (D.I. 14 at 6.) At the art gallery, she prepared canvases by pulling on the canvas and stapling it to the frame, using a stretcher and pliers. (Id.) According to Nancarrow, doing this 50 to 200 times a day caused her to develop pain in her dominant left hand that spread to her arm, eventually affecting her entire upper left extremity. (Id.) Nancarrow's alleged injuries are loss of use of her left hand and arm and pain in her shoulder, back, and right arm. (Id. at 6-7.)

1. Medical Evidence

According to Nancarrow, overuse syndrome resulting from stretching canvases caused her to start experiencing pain in her dominant left arm and swelling in her left hand in September of 1988.[3] (D.I. 12 at 183.) She was treated at the Emergency Room of Dover Air Force Base, where she was diagnosed with tendonitis and placed in a splint. (Id. at 278, 295.) After that, she was treated by multiple doctors. In April of 1989, Dr. Cucuzzella started Nancarrow on a physical therapy program and had the impression that she may have had reflex sympathetic dystrophy ("RSD").[4] (Id. at 279.)

_____

[3]The Commissioner argues that, since Nancarrow previously applied for and was denied benefits but never appealed that denial, any assertion of disability prior to the date of that earlier denial is not subject to judicial review because of the principles of res judicata. (D.I. 17 at 1.) The Commissioner further argues that, because of that res judicata effect, medical evidence dating from that earlier period is "of limited relevance." (Id. at 4) Nancarrow counters that, among other reasons, the res judicata argument must fail because "there was an implied request to reopen [the first application,]" and that the ALJ in fact did reopen and consider it. (D.I. 18 at 1.) For the sake of argument, I accept the plaintiff's assertion that the ALJ granted an implied request to reopen the first request. Since I grant the Commissioner's motion for summary judgment, the parties' dispute on this point is of no consequence.

[4]RSD may be described as follows:

Reflex sympathetic dystrophy syndrome (RSDS) is a severe, painful and long-lasting condition that usually involves one arm or leg. . . . The

-3-

He found that she was gradually responding to physical therapy but then noticed that the pain had worsened in September of 1989. (*Id.* at 277.) Later, she sought care from Dr. Golden, an anesthesiologist at Medical Center of Delaware, who found that the diagnosis of RSD was a strong possibly. (*Id.* at 296.) He performed left stellate ganglion blocks and later gave Nancarrow a thoracic epidural injection after lack of improvement from the blocks. (*Id.* at 295-99.)

In 1990, she was treated by neurologists, Dr. Tahmoush of Thomas Jefferson University Hospital and Dr. Freedman of McGee Rehabilitation, who both found that RSD was unlikely. (*Id.* at 175, 179.) Dr. Tahmoush found evidence of left bicipital tendinitis and wrist extensor tendinitis. (*Id.* at 173.) She had not worked for two years after her injury and complained of multiple episodes after an attempt to return to work as an optician. (*Id.* at 172-73.) Dr. Freedman recommended that Nancarrow change her dominant hand from left to right and seek vocational counseling to find a job that did not require repetitive use of her left hand. (*Id.* at 179.) In 1991, Dr. Case, an orthopaedic surgeon, also indicated that the Nancarrow's physical findings were

---

problem in RSDS is severe, constant, burning pain in the affected arm or leg. The condition can be triggered by damage to nerve fibers in tissue that was injured in some way, but the cause of this syndrome remains unknown. Experts believe that in RSDS, nerves become overly sensitive. Painful signals become more painful, and common stimuli such as light touch and temperature changes also are experienced as pain. This condition usually starts after an injury or other event, such as trauma, a fracture, an infection, surgery, a stroke or wearing a plaster cast. Often, the injury that triggers reflex sympathetic dystrophy syndrome is very mild compared with the pain that follows it.

Harvard Medical School's Consumer Health Information, http://www.intelihealth.com (last visited September 30, 2005).

-4-

minimal, and he said he was uncertain why she could not work as an optician, a job he described as "quite light duty activity." (*Id.* at 182.)

Nancarrow returned to Dr. Tahmoush in November of 1993 and complained of pain due to increased activity. (*Id.* at 177.) She continued to undergo treatment. Dr. Boytim stated that Nancarrow appeared to have reaggravated her symptoms and placed her in a cast at her request. (*Id.* at 177, 281.) Then Nancarrow sought treatment with Dr. DuShuttle, complaining that work caused increased hand discomfort and that she was unable to hold a pen or use her hand in a repetitive manner. (*Id.* at 267.) He concluded that she was capable of one-handed duty with no repetitive use of her hand. (*Id.*) She was later seen by Dr. Schneider, a hand surgeon, who felt that she had DeQuervain's tendinitis in her right hand but could not document any major impairment of the function of her right hand. (*Id.* at 177.)

At Cape Coral Hospital in Florida, she underwent surgeries for her left arm in February of 1996 (*Id.* at 285) and for her left elbow in February of 1997 (*Id.* at 198.). After the elbow surgery, Dr. Fuller, her surgeon, determined that the strength of her left hand was approximately 1/3 that of her right hand and her range of motion was good. (*Id.* at 197.) Then, in early 1998, Nancarrow went to another neurologist, Dr. Bakhtian of Lee Memorial Hospital in Ft. Myers, Florida, with the complaint of pain, numbness, and tingling in the left upper extremity. (*Id.* at 217.) She denied, however, any neck pain, shoulder pain, medial scapular pain, or proximal arm pain. (*Id.*) His impression was that the pain was more musculoskeletal in origin and was not due to RSD or cervical radiculopathy. (*Id.*)

-5-

In April of 1999, Dr. Case stated that Nancarrow felt somewhat better since the surgeries on her left arm. (*Id.* at 178.) She asserted that she did well without repetitive use of her left arm and took no medication for pain. (*Id.*) Dr. Case also reported that if Nancarrow did anything to increase her symptoms, she would wear a brace. (*Id.*) She testified, and doctors have noted, that she is allergic to most pain medications. (*Id.* at 44, 267.) Dr. Case found no reason for ongoing treatment other than avoiding repetitive use of her left arm and frequent writing with her left hand. (*Id.*) He determined that she was capable of full-time work if she used her non-dominant arm for lifting and reaching. (*Id.*) Dr. Case found no significant change in her complaints or physical findings in April 1999 compared to August 1991. (*Id.* at 176.) Furthermore, in 2000, a physical residual functional capacity assessment was performed on Nancarrow. (*Id.* at 222.) It stated that she had the ability to occasionally lift or carry 20 pounds, to frequently lift or carry 10 pounds, and to stand, walk, or sit for 6 hours in an 8-hour workday. (*Id.* at 223.)

## 2. ALJ's Decision

To determine whether a claimant is entitled to social security disability benefits, an ALJ applies a sequential five-step inquiry pursuant to 20 C.F.R. § 404.1520. *See Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (establishing five steps); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986) (same).

> Under that five step analysis, the [ALJ] determines first whether an individual is currently engaged in substantial gainful activity. If that individual is engaged in substantial gainful activity, he will be found not disabled regardless of the medical findings. If an individual is found not to be engaged in substantial gainful activity, the [ALJ] will determine whether the medical evidence indicates that the claimant suffers from a severe

-6-

impairment. If the [ALJ] determines that the claimant suffers from a severe impairment, the [ALJ] will next determine whether the impairment meets or equals a list of impairments in Appendix 1 of sub-part P of Regulations No. 4 of the Code of Regulations. If the individual meets or equals the list of impairments, the claimant will be found disabled. If he does not, the [ALJ] must determine if the individual is capable of performing his past relevant work considering his severe impairment. If the [ALJ] determines that the individual is not capable of performing his past relevant work, then she must determine whether, considering the claimant's age, education, past work experience and residual functional capacity, he is capable of performing other work which exists in the national economy.

*Brewster*, 786 F.2d at 583-84 (internal citations omitted); *see also* 20 C.F.R. §

404.1520(a)(4).

In this case, after applying the five-step evaluation, the ALJ concluded that

Nancarrow "was not under a 'disability' as defined in the Social Security Act, on or

before March 31, 1999, the date she last met the special insured requirements" under

20 C.F.R § 404.1520(f). (D.I. 12 at 23.) The ALJ first found that Nancarrow was not

engaged in substantial gainful activity. *(Id.* at 21.) Next, the ALJ determined that,

although Nancarrow had a severe impairment, her pain and discomfort was not of a

duration, frequency, or intensity as to be totally disabling nor to preclude sedentary

work. *(Id.)* Then, the ALJ concluded that Nancarrow could not return to past relevant

work because those occupations required use of her upper extremity occasionally and

frequently. *(Id.* at 22.) Last, to determine whether Nancarrow was capable of other

work that existed in the national economy, the ALJ viewed Nancarrow's age, education,

physical ability and work experience for the period on or before March 31, 1999 in

conjunction with vocational rules under the Medical-Vocational Guidelines ("grid rules").[5]

_____

[5]In the ALJ's opinion, he cited rules 201.28 and 201.29 of the grid rules. (D.I. 12 at 23.) As Nancarrow noted in her opening brief, the ALJ incorrectly referred to rules

(*Id.*)  According to grid rules 201.21 and 201.22, a claimant, aged 45 to 49 with high

school education, vocational training as an optician, and the residual functional capacity

for sedentary work, is not disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. 1, R.

201.21, 201.22.  The ALJ, therefore, concluded that Nancarrow was not disabled.  (D.I.

12 at 22.)

III.   **STANDARD OF REVIEW**

      Judicial review of the denial of an application for Social Security benefits is

limited to determining whether there is substantial evidence to support the

Commissioner's decision.  42 U.S.C. § 405(g); *see Plummer v. Apfel*, 186 F.3d 422,

427 (3d Cir. 1999) (defining "substantial evidence").  Substantial evidence is "more than

a scintilla.  It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

IV.   **DISCUSSION**

      Nancarrow claims that the findings of the ALJ are not supported by substantial

evidence.  (D.I. 14 at 8.)  Specifically, she argues that the ALJ failed to assess her

chronic pain syndrome impairment and the resulting functional limitations, thereby

improperly rejecting her report of pain as a severe impairment.  (*Id.* at 8.)  Moreover,

Nancarrow contends that the ALJ erroneously applied the grid rules by failing to

---

201.28 and 201.29; those rules apply to an individual between ages 18 and 44, and
Nancarrow's age was 47.  (D.I. 14 at 19 n.1.)  The correct grid rules are rules 201.21
and 201.22.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. 1, R. 201.21, 201.22.  The
error, however, is immaterial because the result is the same when applying the correct
grid rules.

consider all of her severe impairments in determining the availability of work in the national economy. (*Id.* at 19-20.)

      A.    Whether The ALJ Accurately Assessed Nancarrow's Report Of Pain

      The five-step evaluation under 20 C.F.R. § 404.1520(a)(4) involves determining, in step two, whether the claimant suffers from a severe impairment and then determining, in step three, whether, if it exists, the severe impairment meets or equals a list of impairments in Appendix 1 of sub-part P of Regulations No. 4 of the Code of Regulations. *Brewster*, 786 F.2d at 583-84. Nancarrow asserts that the ALJ inappropriately rejected her report of pain as a severe impairment. (D.I. 14 at 8.) On the contrary, in step two the ALJ found, after considering the effects of Nancarrow's alleged pain, that she had severe impairments. (D.I. 12 at 21, 23.) Under step three, however, the ALJ found that the impairment did not fall under the lists of impairments in Appendix 1 of sub-part P of Regulations No. 4 of the Code of Regulations. (*Id.*) The ALJ's decision to move to step four after finding no disabling impairments, therefore, is supported by substantial evidence.

      Furthermore, Nancarrow submits that the ALJ failed to consider her severe impairment in assessing step five of the sequential evaluation. (D.I. 14 at 8.) Contrary to her allegation, the ALJ took into account Nancarrow's report of pain in determining whether she was capable of other work existing in the national economy. (*See* D.I. 12 at 21.) After examining the objective medical evidence, the ALJ concluded that "the record does not reasonably support the chronicity and intensity of alleged pain that would significantly reduce the claimant's physical capabilities for the period on or before March 31, 1999." (*Id.*) He stated that Nancarrow's mere statements of pain were not

-9-

sufficient evidence that her impairment was disabling. (*Id.*) In addition, the ALJ noted

that Dr. Case reported, in April of 1999, that Nancarrow did "pretty well" without

repetitive use of her left arm and was capable of performing light duty. (*Id.* at 19.) In

addition, the ALJ indicated that several doctors, on or before March 31, 1999,

recommended that she seek work that did not require repetitive use of her left upper

extremity. (*Id.*) Thus, the ALJ concluded that Nancarrow had the residual functional

capacity[6] for sedentary work, a factor included in his assessment of step five. (*Id.* at

22-23.) As such, the ALJ properly considered the entire record, including Nancarrow's

report of pain, in determining whether she was disabled.

B.     Whether The ALJ Properly Applied The Grid Rules

In step five of the sequential evaluation, the ALJ must consider the claimant's

age, education, past work experience, and residual functional capacity in order to

determine whether a significant number of jobs in the national economy were available

to her. *See Brewster*, 786 F.2d at 583-84 (outlining five steps). Nancarrow contends

that the ALJ failed to consider the relevant part of the testimony of the vocational expert

["VE"] in which the VE stated that the number of jobs available to Nancarrow would be

significantly reduced in light of her limited use of her non-dominant upper extremity and

her lack of use of her dominant upper extremity. (D.I. 14 at 23-24.) The ALJ, however,

noted that doctors repeatedly recommended that Nancarrow perform one-handed duty.

(D.I. 12 at 19.) The ALJ also noted that Nancarrow and her husband both testified that

---

[6]The ALJ defined "residual functional capacity" as "the most an individual can still
do after considering the effects of physical and/or mental limitations that affect the
ability to perform work-related tasks." (D.I. 12 at 21 (paraphrasing definition from 20
C.F.R. § 404.1545 and Social Security Ruling 96-8p).)

-10-

her right arm became worse on or after March 31, 1999. (*Id.*) The ALJ, therefore, found that Nancarrow's condition, including her problems with her right arm, started deteriorating after March 31, 1999. (*Id.* at 19.) The ALJ properly evaluated the VE's testimony in light of this determination, and there is substantial evidence to support the ALJ's application of the grid rules and his determination that Nancarrow was capable of working in a significant number of jobs in the national economy. (*Id.* at 22-23.)

V.    **CONCLUSION**

For the reasons stated, the Commissioner's motion (D.I. 17) will be granted, and Nancarrow's motion (D.I. 14) will be denied.  An appropriate order will issue.

-11-